1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    T.V., et al.,                              No.  2:15-cv-00889-KJM-AC

12                    Plaintiffs,

13          v.                                   ORDER

14    SACRAMENTO CITY UNIFIED
      SCHOOL DISTRICT,
15
                      Defendant.
16

17

18          Plaintiffs bring this action against Sacramento City Unified School District ("the

19    District" or "defendant"), alleging the Gifted and Talented Education ("GATE") program at

20    David Lubin Elementary School ("Lubin Elementary") had the purpose and effect of dividing

21    classes along racial lines in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C.

22    § 2000d.  This matter is before the court on defendant's motion to dismiss and motion for a more

23    definite statement.  ECF No. 13.  Plaintiffs oppose both motions.  ECF No. 16.  The court

24    submitted the matter as provided by Local Rule 230(g).  As explained below, the court GRANTS

25    IN PART and DENIES IN PART defendant's motion to dismiss, and DENIES defendant's

26    motion for a more definite statement.

27    /////

28    /////

I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed a complaint on April 24, 2015, ECF No. 1, and a first amended complaint on June 11, 2015, ECF No. 5.  As approved by the court, plaintiffs filed the operative second amended complaint on September 4, 2015.  ECF No. 12.  On September 17, 2015, defendant filed the pending motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) and for a more definite statement under Federal Rule of Civil Procedure 12(e).  ECF No. 13 ("Mot.").  Plaintiffs opposed the motions, ECF No. 16 ("Opp'n"), and defendant replied, ECF No. 17 ("Reply").

The second amended complaint makes the following allegations.  The minor plaintiffs are students of Hispanic national origin or mixed Hispanic national origin who attended Lubin Elementary during the 2011–2012, 2012–2013 and/or 2013–2014 school years.  Second Am. Compl. ¶¶ 5, 17–21, ECF No. 12 ("SAC").  The District receives federal funds for its educational program.  *Id.* ¶¶ 2, 31, 53.  During the relevant time period, the District maintained the GATE Program for the purpose of racially segregating the students into two separate tracks based on their national origin.  *Id.*  ¶¶ 6, 32.

A.      Structure of the GATE Program

At Lubin Elementary, the District split each grade level into two separate classrooms, with approximately one half of each grade level in the GATE classroom, the "vast majority" of which were white students, and one half of each grade level in the non-GATE classroom.  *Id.* ¶¶ 10–11.  Students selected for the GATE program were provided differential instruction designed to emphasize critical and creative thinking, problem solving, and logical reasoning.  *Id.* ¶ 7.  Students who were not selected were provided a lesser program that was treated as inferior by school staff and administration.  *Id.*  Under official school policy, the students in the non-GATE class were subjected to placement in split classes, which did not allow non-GATE students to socialize at recess or at other times with same grade students in the GATE class, or attend grade level field trips, such as visiting Sutter's Fort, with their peers in the GATE class.  *Id.* ¶¶ 14, 35, 38.  The structure of the District's GATE program is not authorized by

/////

2

1    California's GATE regulations and does not reflect a standard structure for GATE programs in

2    California schools or elsewhere.  *Id.* ¶¶ 16, 33.

3            B.       Selection Process

4            The process utilized by the District to identify students eligible for the GATE

5    program began with the administration of the Naglieri Non-verbal Assessment Test ("NNAT") to

6    all first grade students.  *Id.* ¶ 8.  Students scoring above the seventy-seventh percentile on the

7    NNAT were then further considered for eligibility based on a "profile" of gifted characteristics

8    completed by parents and teachers, academic data, and "impact factors."  *Id.* ¶ 8.  A second

9    method of gaining entrance to the GATE program was based on the Cognitive Abilities Test

10    ("CogAT") in the third grade.  *Id.* ¶ 9.  In at least the 2013–2014 school year, there were not

11    enough GATE eligible students to fill the GATE classes, so the school selected between two and

12    nineteen additional students from the non-GATE program purportedly based on standardized

13    testing.  *Id.* ¶ 11.

14            Plaintiffs believe the District subjectively applied factors to exclude students of

15    Hispanic race/national origin and other non-white students from the GATE program.  *Id.* ¶¶ 8–9,

16    36.  In addition, the District did not test all students uniformly.  *Id.*  For example, there is no

17    record of plaintiffs having been given the NNAT and CogAT, and plaintiffs have no memory of

18    being tested.  *Id.* ¶¶ 8–9.  Plaintiff Isabella Maranon was told by the administrators that her

19    children would not be tested because the GATE classes would be too hard given that English was

20    their second language.  *Id.* ¶¶ 8, 25.  However, the Maranon children do not qualify for an English

21    as a Second Language (ESL) designation and do not speak Spanish.  *Id.*

22            C.       Injury from GATE Program

23            The District's policies and segregation of the students created divisiveness

24    between the GATE and non-GATE classes, which led to bullying and negative comments

25    regarding the non-GATE class.  *Id.* ¶ 14.  The non-GATE class was derogatorily referred to as the

26    "ghetto" class or by other similar terms that had a racial or stigmatizing connotation, and the

27    school administration did nothing to ameliorate that characterization despite becoming aware of

28    it.  *Id.* ¶¶ 13–14, 34, 37, 59.

1    As a result of this discrimination, the minor plaintiffs suffered "stigmatization, loss

2    of social companions and typical social opportunities, scorn, embarrassment, humiliation and lost

3    education opportunities." *Id.* ¶ 39.  The educational performance of the minor plaintiffs also

4    suffered as a result of placement in the non-GATE class; for example, T.V.'s STAR test scores

5    decreased over 100 points during the time he was in the non-GATE class. *Id.* ¶ 15.  Placement of

6    J.S. in the non-GATE class exacerbated his academic weaknesses and materially harmed his

7    educational progress. *Id.* ¶ 21.  When A.V. was permitted into the GATE program in her sixth

8    grade year, she and other students who moved from the non-GATE to the GATE class were

9    singled out by the math teacher and treater more harshly. *Id.* ¶ 17.

10    D.    Retaliation

11    District employees intentionally intimidated, coerced, and discriminated against

12    the parents of T.V. and I.M. for the purpose of interfering with their right to advocate on behalf of

13    their children. *Id.* ¶ 55.  Upon raising concerns verbally and in writing related to the disparate

14    treatment of non-white students, plaintiffs Will and Jackie Valerio, the parents of minor T.V.,

15    were retaliated against by school administration. *Id.* ¶ 22.  First, the school administration had

16    hostile and public reactions toward them at school events. *Id.*  Second, T.V. was excluded from

17    the "principal's perfect attendance party," an ice cream social, even though he qualified. *Id.*

18    After the party, the principal admitted that T.V. qualified, but then tried to give T.V.'s parents his

19    certificate in a meeting instead of giving T.V. his certificate alongside his peers. *Id.*  Third,

20    several teachers refused to communicate with the Valerios using typical methods of

21    communication, and one teacher refused to meet with them to discuss their son's progress

22    because they had complained about the disparate treatment. *Id.*  Fourth, the District did not

23    properly investigate or respond to a complaint filed by the Valerios, providing false reasons for its

24    failure. *Id.*

25    On September 26, 2013, when questioned about T.V's performance, the principal

26    stated the system was set up for "white kids" to do better, and perhaps T.V. would have done

27    better on the STAR testing if it had a little more "Tupac in it."  Tupac Shakur is a deceased

28    rapper. *Id.* ¶ 23.  T.V.'s parents complained to school officials regarding the statement, but the

1  complaint did not result in an appropriate investigation. *Id.* On other occasions, T.V. was singled

2  out by the principal for fabricated infractions, including a claim that he intentionally stepped in a

3  hole to injure himself. *Id.* ¶ 24.

4  After plaintiffs Jorge and Isabella Maranon, the parents of minor I.M., complained

5  about the disparate treatment and the bullying of I.M., the District pulled I.M. out of school for

6  five days instead of investigating and addressing the complaints. *Id.* ¶ 25. Other plaintiffs were

7  afraid to complain due to the retaliation inflicted on the Valerios and Maranons. *Id.* ¶ 26.

8  The U.S. Department of Education Office of Civil Rights investigated the District,

9  but before it issued findings, the District agreed to change its GATE program. *Id.* ¶ 27.

10 II.      MOTION TO DISMISS

11        A.      Legal Standard

12        Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

13 dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may

14 dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

15 under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

16 1990).

17        Although a complaint need contain only "a short and plain statement of the claim

18 showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion

19 to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

20 claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

21 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something

22 more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

23 conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting

24 *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss

25 for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

26 its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the

27 interplay between the factual allegations of the complaint and the dispositive issues of law in the

28 action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

1    In making this context-specific evaluation, this court must construe the complaint

2  in the light most favorable to the plaintiff and accept as true the factual allegations of the

3  complaint. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).  Under Rule 12(b)(6), the

4  defendant bears the burden of showing that the plaintiff has failed to state a claim. *Yaqub v.*

5  *Experian Info. Sols., Inc.*, No. 11-2190, 2011 WL 12646345, at \*1 (C.D. Cal. June 10, 2011)

6  (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

7        B.    Disparate Impact Claim

8          Plaintiffs concede there is no private cause of action under Title VI for disparate

9  impact claims.  Opp'n at 8; *see Alexander v. Sandoval*, 532 U.S. 275, 276–77 (2001); *Colwell v.*

10  *Dep't of Health & Human Servs.*, 558 F.3d 1112, 1129 (9th Cir. 2009).  The court therefore

11  GRANTS defendant's motion to dismiss plaintiffs' Title VI disparate impact claim without leave

12  to amend.  *See Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave

13  need not be granted where the amendment of the complaint . . . constitutes an exercise in

14  futility . . . .").

15        C.    Disparate Treatment Claim

16          Defendant argues the second amended complaint does not contain sufficient

17  factual allegations to establish a disparate treatment claim, and plaintiffs' disparate treatment

18  claim is time barred by the applicable statute of limitations.  The court addresses each argument

19  in turn.

20          1.    Whether Allegations State a Claim

21          Under 42 U.S.C. § 2000d, "[n]o person . . . shall, on the ground of race, color, or

22  national origin, be excluded from participation in, be denied the benefits of, or be subjected to

23  discrimination under any program or activity receiving Federal financial assistance." *Id.*  To state

24  a claim for a violation of this section, a plaintiff must plead "(1) the entity involved is engaging in

25  racial discrimination; and (2) the entity involved is receiving federal financial assistance." *Fobbs*

26  *v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994), *overruled in part on other*

27  *grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001).

28  /////

6

1       Defendant argues the second amended complaint does not state a claim for the first

2  element, that the school engaged in racial discrimination, because it does not allege plaintiffs

3  received qualifying scores on the NNAT or CoGAT tests or were prevented from taking the tests

4  because of their national origin or race.  *See* Mot. at 9.  Defendant misconstrues the nature and

5  extent of plaintiffs' discrimination claim.  The second amended complaint does not simply allege

6  the District excluded plaintiffs from the GATE program because of their national origin or race;

7  rather, it alleges the District intentionally designed and implemented the entire GATE program

8  with the purpose of segregating the school into a GATE class of primarily white students and an

9  inferior non-GATE class of primarily non-white students.  *See* SAC ¶¶ 32, 34–38.  The District

10  allegedly achieved its purpose by intentionally excluding non-white students from the GATE

11  program and preventing the GATE and non-GATE classes from socializing together.  *Id.* ¶¶ 8–11,

12  35.  Such intentional segregation, if proven, would constitute racial discrimination against

13  plaintiffs even if they would not have qualified for the GATE program as it was designed, and

14  even if the two programs were in fact "equal" in educational value.  *See Brown v. Bd. of Educ. of*

15  *Topeka, Shawnee Cty., Kan.*, 347 U.S. 483, 493 (1954), *supplemented sub nom. Brown v. Bd. of*

16  *Educ. of Topeka, Kan.*, 349 U.S. 294 (1955); *see also Kelly v. Guinn*, 456 F.2d 100, 106-08 (9th

17  Cir. 1972).

18       In addition, the second amended complaint provides sufficient factual allegations

19  to support the disparate treatment claim at this stage.  The complaint alleges the District designed

20  the structure of the GATE program to split the students into almost equal halves, aligned mostly

21  by national origin or race, with the purpose of creating a two-tier division of classes based on

22  national origin or race.  *See* SAC ¶¶ 10, 32.  It alleges the District designed and manipulated the

23  selection process to exclude non-white students from the GATE program, such as through the use

24  of subjective factors, *id.* ¶¶ 8–11, 36, and instituted policies to segregate the GATE and non-

25  GATE students from learning or socializing together, *id.* ¶ 14.  Specific facts and anecdotes

26  further support plaintiffs' claim of racial discrimination: the non-GATE class was referred to as

27  the "ghetto" class, and the school administration did nothing to ameliorate that characterization,

28  *see id.* ¶ 13; Hispanic students were incorrectly labelled as English as Second Language students,

7

1  even though they did not speak Spanish, *see id.* ¶ 8; and the school principal said one student

2  would have done better on standardized testing if the test had a little more "Tupac in it," *id.* ¶ 23.

3  These allegations, taken together, state a plausible claim of disparate treatment discrimination

4  under Title VI.

5                         2.        Statute of Limitations

6                 Title VI discrimination claims filed in California are subject to California's

7  two-year statute of limitations for personal injury claims.  *See Taylor v. Regents of Univ. of Cal.*,

8  993 F.2d 710, 712 (9th Cir. 1993) (per curiam) (holding statute of limitations for claims brought

9  under § 2000d is "same state limitations period applicable to claims brought under [42 U.S.C.] §

10  1983"); *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) (§ 1983 claim governed by

11  California's two-year statute of limitations for personal injury actions).  However, "[t]he

12  continuing violations doctrine extends the accrual of a claim if a continuing system of

13  discrimination violates an individual's rights 'up to a point in time that falls within the applicable

14  limitations period.'"  *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 822 (9th Cir.),

15  *amended*, 271 F.3d 910 (9th Cir. 2001) (quoting *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918,

16  924 (9th Cir. 1982)).  A plaintiff can establish a "continuing violation" by showing a "systematic

17  policy or practice of discrimination that operated, in part, within the limitations period—a

18  systemic violation."  *Id.* (citation omitted).

19                 Similar to its first argument, defendant contends plaintiffs' disparate treatment

20  claim is time-barred because plaintiffs were first excluded from the GATE program more than

21  two years before they filed the instant action.  *See* Mot. at 8–9.  Again, under plaintiffs'

22  segregation theory, the school violated Title VI continuously and systematically while the GATE

23  program was operated, through the 2013–2014 school year, rather than only at the time plaintiffs

24  were initially rejected from the program.  Given that plaintiffs filed this action on April 23, 2015,

25  the alleged systemic violation operated in part within the two year statute of limitations period

26  under *Douglas*.  Because plaintiffs' allegations are consistent with a theory of a "continuing

27  violation," defendant has not met its burden of showing plaintiffs' disparate treatment claim

28  should be dismissed as time-barred at this stage.

8

1       For the foregoing reasons, the court DENIES defendant's motion to dismiss

2   plaintiffs' disparate treatment claim.

3           D.      Hostile Education Environment

4               The Ninth Circuit has applied the three-part framework set out by the U.S.

5   Department of Education to analyze hostile environment claims under Title VI.  *See Monteiro v.*

6   *Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1033 (9th Cir. 1998).  According to the Department

7   of Education, a school district violates Title VI when (1) there is a racially hostile environment;

8   (2) the district had notice of the problem; and (3) the district "failed to respond adequately to

9   redress the racially hostile environment."  Investigative Guidance on Racial Incidents and

10  Harassment Against Students, 59 Fed. Reg. 11448-01, 11449 (Mar. 10, 1994).  "Under this

11  analysis, an alleged harasser need not be an agent or employee of the recipient because this theory

12  of liability under Title VI is premised on a recipient's general duty to provide a nondiscriminatory

13  educational environment."  *Id.*  The Department of Education defines a "racially hostile

14  environment" as one in which racial harassment is "severe, pervasive or persistent so as to

15  interfere with or limit the ability of an individual to participate in or benefit from the services,

16  activities or privileges provided by the recipient."  *Id.*; *see Monteiro*, 158 F.3d at 1033.  "Whether

17  a hostile educational environment exists is a question of fact, determined with reference to the

18  totality of the circumstances, including the victim's race and age."  *Monteiro*, 158 F.3d at 1033.

19              Defendant's argument that plaintiffs have not alleged the existence a racially

20  hostile environment under the first part of the framework is unpersuasive.  *See* Mot. at 13.

21  Several allegations described above support plaintiffs' claim that the school is a racially hostile

22  environment: the District used the GATE program and other policies to segregate students based

23  on national origin or race, *see* SAC ¶¶ 10, 14, 32; the non-GATE class was referred to as the

24  "ghetto" class, and the school administration did nothing to ameliorate that characterization, *see*

25  *id.* ¶ 13; Hispanic students were incorrectly labelled as English as Second Language students,

26  even though they did not speak Spanish, *see id.* ¶ 8; and the school principal's comment about

27  testing having a little more "Tupac in it," *id.* ¶ 23.  These allegations are sufficient to plausibly

28  suggest racial harassment at Lubin Elementary sufficiently "severe, pervasive or persistent" so as

1    to interfere with the minor plaintiffs' education.  *See* 59 Fed. Reg. at 11449.  Whether the

2    environment is in fact racially hostile is a question of fact not appropriate for resolution on a

3    motion to dismiss.  *See Monteiro*, 158 F.3d at 1033.

4              The court DENIES defendant's motion to dismiss plaintiff's hostile education

5    environment claim.

6              E.       Retaliation

7                       1.       Whether Allegations State a Claim

8              Title VI prohibits recipients of federal funds from "intimidat[ing], threaten[ing],

9    coerc[ing], or discriminat[ing] against any individual for the purpose of interfering with any right

10   or privilege [under Title VI], or because he has made a complaint, testified, assisted, or

11   participated in any manner in an investigation, proceeding or hearing under this part."  34 C.F.R.

12   § 100.7.  To state a claim for retaliation under Title VI, a plaintiff must allege that: (1) plaintiff

13   engaged in a protected activity; (2) plaintiff was subjected to adverse action; and (3) there existed

14   a causal link between the adverse action and the protected activity.  *Jones v. Wash. Metro. Area*

15   *Transit Auth.*, 205 F.3d 428, 433 (D.C. Cir. 2000) (citation omitted).

16             Here, the second amended complaint alleges District employees intentionally

17   intimidated, coerced, and discriminated against the Valerios and Maranons for the purpose of

18   interfering with their right to advocate on behalf of their children.  SAC ¶ 55.  Specifically, the

19   complaint alleges when the parent plaintiffs complained about disparate treatment to the District,

20   the District had hostile and public reactions to the Valerios at school events, a teacher refused to

21   meet with the Valerios, the principal singled out T.V. for fabricated infractions, the District pulled

22   I.M. out of school for five days, and the District refused to properly investigate the complaints of

23   the Valerios or Maranons.  *Id.* ¶¶ 22–27.

24             For the reasons discussed above, the court first rejects defendant's argument that

25   plaintiffs' activity was not protected because their belief the District engaged in unlawful

26   discrimination was not objectively reasonable.  *See* Mot. at 14.  Plaintiffs have stated a plausible

27   claim for disparate treatment discrimination.  The court also rejects defendant's argument that the

28   alleged actions taken against plaintiffs were not sufficiently severe or materially adverse to state a

                                                        10

1    claim. *See id.* at 15 (citing *Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003)). Contrary to

2    defendant's contention, the court finds that the retaliatory actions described above are more than

3    "minor annoyances" or "petty slights" and could plausibly chill a reasonable parent from making

4    a complaint under Title VI on behalf of her children. *See id.* Although some of the alleged

5    retaliatory actions were directed against the parents' children, the second amended complaint

6    alleges the actions were causally linked to the parents' protected activity and were carried out for

7    the purpose of retaliating against the parents, SAC ¶¶ 22–26. *See Jones*, 205 F.3d at 433. For

8    these reasons, defendant has not met its burden of showing the second amended complaint fails to

9    state a claim for retaliation at this stage. *See Yaqub*, 2011 WL 12646345, at *1.

10         The court DENIES defendant's motion to dismiss plaintiff's retaliation claim

11   insofar as it seeks monetary damages.

12              2.    Permanent Injunction

13         The second amended complaint also prays for a permanent injunction prohibiting

14   defendant from retaliating against plaintiffs. SAC at 13. To be awarded a permanent injunction,

15   a plaintiff must show: (1) that the plaintiff has suffered an irreparable injury; (2) that remedies

16   available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that,

17   considering the balance of hardships between the plaintiff and defendant, a remedy in equity is

18   warranted; and (4) that the public interest would not be disserved by a permanent injunction.

19   *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Here, the second amended

20   complaint as currently pled does not state the irreparable injury plaintiffs have suffered as a result

21   of defendant's retaliation or explain why the monetary damages they seek would not fully

22   compensate them for their injury.

23         The court GRANTS defendant's motion to dismiss plaintiffs' request for a

24   permanent injunction, but with leave to amend.

25   III.   MOTION FOR A MORE DEFINITE STATEMENT

26         Under Federal Rule of Civil Procedure 12(e), "[a] party may move for a more

27   definite statement of a pleading to which a responsive pleading is allowed but which is so vague

28   or ambiguous that the party cannot reasonably prepare a response." *Id.* Motions under this rule

1   are generally disfavored and rarely granted.  *Castaneda v. Burger King Corp.*, 597 F. Supp. 2d

2   1035, 1045 (N.D. Cal. 2009) (quotation marks and citations omitted).  A motion for a more

3   definite statement may be granted if the defendant "cannot understand the substance of the claim

4   asserted," *Griffin v. Cedar Fair, L.P.*, 817 F. Supp. 2d 1152, 1154 (N.D. Cal. 2011) (quoting

5   *Castaneda*, 596 F. Supp. 2d at 1045), or if the defendant cannot "frame a responsive pleading,"

6   *id.* (quoting *Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Cal. 1981)).

7   Ordinarily, if discovery would reveal the detail sought, the motion should be denied.  *Beery v.*

8   *Hitachi Home Elecs., Inc.*, 157 F.R.D. 477, 480 (C.D. Cal. 1993).

9          Here, defendant requests a more definite statement with respect to plaintiffs'

10   hostile educational environment claim and disparate treatment claim to determine if these claims

11   are time barred.  As discussed above, the second amended complaint sufficiently states a claim

12   under the continuing violation doctrine, and defendant may elicit additional details relating to the

13   timing of the alleged events to support its statute of limitations defense through appropriate

14   discovery.  The second amended complaint is not "so vague or ambiguous" that defendant cannot

15   reasonably prepare a response.  *See* Fed. R. Civ. P. 12(e).

16          Defendant's motion for a more definite statement is DENIED.

17   IV.   CONCLUSION

18          For the foregoing reasons, defendant's motion to dismiss is GRANTED without

19   leave to amend as to plaintiffs' disparate impact claim and GRANTED with leave to amend as to

20   plaintiffs' request for a permanent injunction.  Defendant's motion to dismiss is DENIED in all

21   other respects.  Defendant's motion for a more definite statement is DENIED.  A third amended

22   complaint shall be filed no later than 14 days after the filing date of this order.

23          IT IS SO ORDERED.

24   DATED:  February 2, 2016.

25

26   _____

27   UNITED STATES DISTRICT JUDGE

28