UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.V., et al., | No. 2:15-cv-0889-KJM-AC |
| Plaintiffs, | |
| v. | ORDER |
| SACRAMENTO CITY UNIFIED SCHOOL DISTRICT, | |
| Defendant. | |

Six minors, all students of Hispanic heritage, allege they were denied entry to the Sacramento City Unified School District's Gifted and Talented Education ("GATE") Program and faced race-based peer harassment as a result. The minors, referred to here as T.V., A.V., I.M., D.S., J.S. and A.S., are all proceeding through guardians ad litem. Third Am. Compl. ("TAC"), ECF No. 24, ¶ 1. The minors and four parents sue the District for civil rights violations. The parties settled and plaintiffs now jointly move to approve the minors' portion of the settlement. Mot., ECF No. 43. The court heard the motion on August 10, 2018. H'rg Mins., ECF No. 54. Guardians ad litem appeared for each minor, either in person or telephonically. *See id.* As explained below, the motion is GRANTED.

////

1

I.     BACKGROUND

       A. Factual and Procedural background

       At all relevant times, the six minors were elementary school students at David Lubin Elementary. TAC ¶ 5. Each minor is of full or mixed Hispanic heritage and alleges he or she was systemically denied consideration for the City's GATE Program for higher-achieving students, despite being potentially qualified. *See id.* ¶¶ 5-8. The minors were subjected to racialized peer harassment, with some minors being called "poor," "dumb," "beaner" and "ghetto" to their faces, and being referred to as part of the "ghetto class." *See id.* ¶¶ 13, 17-21. When I.M.'s parents and siblings A.V. and T.V.'s parents confronted the administration, the parents and their children were retaliated against, treated coldly and ostracized. *Id.* ¶¶ 22-26.

       Plaintiffs collectively sued the School District for creating a hostile school environment, for disparate treatment and retaliation, all under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. *Id.* ¶¶ 28-49. In January 2018, after a mid-litigation status conference, the court referred this case to the court's Voluntary Dispute Resolution Program (VDRP). *See* ECF No. 40. In April 2018, the parties participated in a full day of mediation before VDRP panelist Carolyn G. Burnette, during which they reached a proposed $100,000.00 settlement. *See* Min. Order, ECF No. 42 (acknowledging notice of settlement). On May 16, 2018, plaintiffs filed this unopposed motion to approve the settlement as it pertains to the minors' claims. *See* Mot. Finding the motion contained insufficient detail and authority, the court ordered supplemental briefing and continued the hearing to August 10, 2018. Order, ECF No. 48. Plaintiffs filed their supplemental briefing on July 28, 2018, and August 8, 2018. *See* ECF Nos. 49-51, 53.

       B. Proposed Settlement

       The proposed $100,000.00 settlement is to be divided among all plaintiffs based on their relative harm as reflected in their deposition testimony. *See* Mot. at 2; *See* Exs. A-J, Suppl. Jambeck Decl., ECF No. 50 (deposition excerpts). The settlement agreement also contemplates an attorneys' fee award totaling $31,700.02, to be deducted pro rata from each plaintiff's award. Suppl. Br., ECF No. 49, at 3. The net proposed award breaks down as follows:

D.S.[1] will receive $683.00; J.S. will receive $1,366.00; D.S. will receive $7,513.00; I.M. will receive $14,684.50; I.M.'s parents will receive $14,684.50; T.V. and A.V. will each receive $9,789.66; and T.V. and A.V.'s parents will jointly receive $9,789.66. *Id*. The court must assess whether the total net settlement sum, and each proposed division, is in the best interest of each minor.

II. <u>LEGAL STANDARD</u>

District courts have a duty to protect the interests of minor or incompetent litigants. *See* Fed. R. Civ. P. 17(c)(2) (requiring a district to "appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action"). When a case settles, this special duty requires a district court to "conduct its own inquiry to determine whether the settlement serves the best interests of the minor." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011) (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)); *see also* E.D. Cal. L. R. 202(b) ("No claim by or against a minor or incompetent person may be settled or compromised absent an order by the Court approving the settlement or compromise."). Specifically, district courts must assess whether the "net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Robidoux*, 638 F.3d at 1181-82. As reviewed at hearing, the fairness evaluation focuses only on what the minor plaintiff receives, without regard to what adult plaintiffs and attorneys might receive. *Id.* at 1182.

III. <u>DISCUSSION</u>

Here, based on the record before the court as clarified at hearing, the proposed net settlement sums appear fair and reasonable. In reaching this conclusion, the court has reviewed the record and recovery in cases roughly analogous to this one, while recognizing the paucity of settlements on all fours. *See Robidoux*, 638 F.3d at 1181-82.

/////

---

[1] Two of the minors share the initials "D.S.," but are distinguished here by their different genders and recovery amounts. At hearing, the court and parties referred to the "first D.S." and the "second D.S.," consistent with the order in which they are presented in this order.

A. The Record

The minors' and parents' deposition excerpts, which describe the totality of harm each minor endured, support each minor's proposed settlement. *See* Jambeck Decl. Exs. A-J.

D.S. receives the lowest net sum, totaling $683.00. *See* Suppl. Br. at 3. This figure is based on her relatively short time in the hostile environment, which lasted only six months, and her testimony that she did not personally experience any name calling or other harassment. D.S. Dep. (Ex. A) at 35-36. At hearing, D.S.'s guardian ad litem confirmed this sum is fair and reasonable.

The next lowest sum, totaling $1,366, goes to J.S. Suppl. Br, at 3. This sum is likewise supported by the record, as J.S. was in the allegedly hostile environment for longer than D.S., though the record provided does not state precisely how long. *See generally* J.S. Dep. (Ex. B); *see also* Suppl. Br. at 1-3. J.S. likewise admitted the school environment did not significantly affect him. J.D. Dep. at 29. At hearing, J.S.'s guardian ad litem confirmed this sum is fair and reasonable.

D.S. receives a greater amount, $7,513. Suppl. Br. at 3. The figure is based on his testimony that he was directly called names like "ghetto," and he felt stigmatized based on the school division such that he was unable to socialize with school friends. D.S. Dep. (Ex. C) at 34, 73. The award is lower than the three minors discussed next, in part because D.S. testified that he does not suffer lingering effects, as he has since moved on and is working toward his higher education. *Id.* At hearing, D.S.'s guardian ad litem confirmed this sum is fair and reasonable.

Siblings T.V. and A.V. receive the second highest amount of $9,789.66 each. Suppl. Br, at 3. The court has reservations regarding these awards: They are identical despite T.V.'s admitting he was never directly called names, while A.V. testified she was directly called names like "ghetto," "dumb" and "poor" and part of the "ghetto class" for at least two years, with increasing frequency over those two years. *See* A.V. Dep. (Ex. H) at 29, 32-33; T.V. Dep. (Ex. G) at 68. Nonetheless, counsel and each guardian ad litem confirmed at hearing that these sums are warranted; as counsel explained, in their views, T.V. was significantly affected including by

/////

4

his inclusion in what was frequently referred to as the "ghetto class." *See* T.V. Dep. at 68. At hearing, T.V. and A.V.'s guardian ad litem confirmed this sum is fair and reasonable.

I.M. receives the highest amount, totaling $14,684.50. Suppl. Br. at 3.[2] The court reviewed its questions with counsel over the discrepancy between I.M.'s award and the other minors' awards, but the guardians ad litem for all plaintiffs have confirmed the total is fair. As counsel explained, I.M. testified that he was directly called "ghetto," "beaner," "poor" and "dumb," which caused him more pronounced psychological ramifications than the other minors, including temporary suicidal ideation. *See* I.M. Dep. (Ex. E) at 32-36, 46.

Two groups of parents are to receive payments based on the retaliation they experienced from District employees after confronting the school about the G.A.T.E. program's disparate treatment of Hispanic students. *See* Suppl. Br. at 3. A.V. and T.V.'s parents are slated to receive $9,789.66, and I.M.'s parents $14,684.50. *Id.* Although the court and counsel reviewed these awards at hearing, with the guardians ad litem present, parental awards ultimately are irrelevant to the court's fairness evaluation as to each minor. *See Robidoux*, 638 F.3d at 1181.

Based on this record and all affirmations from the guardians ad litem at hearing, the court is satisfied the minors' individual awards are fairly related to and supported by the facts as described in their depositions. *See* Jambeck Decl. Exs. A-J.

B. Recovery in Similar Cases

In assessing whether the proposed recoveries are fair and reasonable, courts look recoveries that have been approved in similar cases. *See Robidoux*, 638 F.3d at 1182.

For these comparisons, courts use the net settlement figure for the minors' claims exclusively, separate from all fees and parental awards. *See id.* Here, the $100,000.00 settlement contemplates an attorneys' fee award totaling $31,700.02, to be deducted pro rata from each plaintiff's award. Suppl. Br. at 3. That deduction results in a net settlement of $68,299.98. *Id.* Of that net total, two amounts are reserved for the parents of plaintiffs: as noted, I.M.'s parents will receive $14,684.50, and T.V. and A.V.'s parents will receive $9,789.66. *Id.* With those

---

[2] As noted at hearing, the supplemental brief contains a typographical error on page 3 where it refers to I.S. and I.S.'s parents instead of I.M. and I.M.'s parents.

deductions, the net settlement for the minors' claims totals $43,825.82. The numbers set forth above for each minor reflect the net settlement amount that minor will receive. At hearing, counsel agreed the court has calculated the final figure correctly.

Counsel both acknowledged they have struggled to identify factually analogous Title VI cases approving similar recoveries. Plaintiffs identified *Santamaria v. Dall. Indep. Sch. Dist.*, No. 3:06-CV-692-L, 2006 U.S. Dist. LEXIS 83417 (N.D. Tex. Nov. 16, 2006). *See* Notice of Suppl. Authority, ECF No. 53. Yet that case did not involve a settlement at all, let alone one approved by the court. *See Santamaria*, 2006 U.S. Dist. LEXIS at *163-164 (court awarding $100.00 each to three minors of Hispanic descent for claims of segregation under Title VI of the Civil Rights Act of 1964). At hearing, defense counsel identified a 2004 case from the District of Minnesota, which involved allegations that a school district discriminated against two minors based on their national origin and created a hostile school environment. *See Fox v. Indep. Sch. Dist. No. 2609*, Case No. 01-1701-RHK/RLE, 2004 WL 1243405, *1 (D. Minn. Feb. 12, 2004). Though dated and from another jurisdiction, *Fox* proves helpful as the court there approved a $25,000.00 settlement, with each minor receiving $10,000.00 and the parents receiving $5,000.00. *Id.* The $10,000.00 figure is comparable to A.V.'s and T.V.'s awards here, of $9,789.66 each. Suppl. Br. at 3. That figure also represents a rough average of the six minors' awards, which range from $683.00 to $14,684.50. *See id.* The recoveries in *Fox* are therefore comparable to the recoveries here.

The court has not separately identified case law approving division of a net settlement amount in a manner comparable to the division proposed here, with some minors receiving a substantially lower sum than others. Nonetheless, given the basis for the discrepancies described above, as well as the discussion with counsel and each guardian ad litem at hearing, the court ultimately is persuaded that each minor's net sum is fair and reasonable.

IV. <u>CONCLUSION</u>

The court finds the proposed settlement serves the minors' best interests. Accordingly, the court GRANTS the motion; APPROVES the proposed settlement; and ORDERS as follows:

6

1. Defendant shall issue a check in the amount of $100,000.00 payable to Leigh Law Group client trust account.
2. From that amount, Leigh Law Group shall issue the following checks:
    (a) $31,700.02, payable to Leigh Law Group, P.C.
    (b) $683.00, payable to the guardian of D.S. for her benefit.
    (c) $1,366.00, payable to the guardian of J.S. for her benefit.
    (d) $7,513.00, payable to D.S. to be deposited into a federally insured blocked account.[3]
    (e) $14,684.50, payable to I.S. to be deposited into a federally insured blocked account.
    (f) $14,684.50, payable to I.S.'s parents for their own benefit.
    (g) $9,789.66, payable to T.V. to be deposited into a federally insured blocked account.
    (h) $9,789.66, payable to A.V. to be deposited into a federally insured blocked account.
    (i) $9,789.66, payable to A.V. and T.V.'s parents for their own benefit.
3. As discussed at hearing, Mr. Jambeck shall file proof of the payments specified in 2 (a)-(i) within 60 days, along with a stipulated dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(ii).

IT IS SO ORDERED.

This resolves ECF No. 43.

DATED: August 14, 2018.

_____
UNITED STATES DISTRICT JUDGE

---

[3] The California Probate Code provides that funds owed to a minor that exceed $5,000.00 must be deposited into a federally insured blocked account, while funds below that threshold may be given directly to the minor's guardian. *See* Cal. Prob. Code §§ 3401(c), 3611(e).